UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: OLGA D. PAREDES<br>    ssn: \*\*\*-\*\*-6072<br>                   Debtor. | CASE NO. 09-22261 RDD |

**AFFIRMATION IN SUPPORT OF DEBTOR'S
MOTION OBJECTING TO CLAIMS**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

The application of OLGA D. PAREDES (the "Debtor") objecting to the allowance of unsecured claims #1, 6, 7, 9 and 12 by her attorney David B. Shaev, Esq., respectfully alleges:

1. On February 25, 2009, the Debtor filed with this Court a petition pursuant to Chapter 13 of Title 11 U.S.C. (the "Bankruptcy Code"). Jeffrey L. Sapir was appointed the Chapter 13 Trustee. The first Meeting of Creditors was held and closed on March 25, 2009. A Confirmation Hearing was held on April 21, 2009 and subsequently adjourned to December 8, 2009.

2. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §157 and §1334. Venue of this case and this motion in this district is proper pursuant to 18 U.S.C. §1408 and §1409. The statutory predicates for relief sought herein are Title 11 U.S.C. §502, and Fed.R.Bankr.Pro. §3001 and §3007.

3. By this motion, the Debtor seeks to disallow the following unsecured claims:

| NAME OF CREDITOR | CLAIM NO. | DATE OF FILING | AMOUNT |
|---|---|---|---|
| Department Stores National Bank/Macys | 1 | 3/9/2009 | $2,917.50 |
| PRA Receivables Management, LLC | 6 | 4/11/2009 | $14,594.81 |
| PRA Receivables Management, LLC | 7 | 4/15/2009 | $10,340.37 |
| Roundup Funding, LLC | 9 | 4/30/2009 | $880.32 |
| PRA Receivables Management, LLC | 12 | 6/1/2009 | $12,060.32 |

Copies of the proofs of claims have been annexed to this motion as Exhibit "A." Furthermore, the Debtor will seek an Order and Judgment from this Honorable Court imposing fines in an amount to be determined by the Court upon each creditor named above as a penalty for presenting a fraudulent claim and an award of attorney's fees in the amount of $2,000.00 for each claim deemed to be fraudulent and/or disallowed.

4. On October 21, 2009 the undersigned sent a demand letter to each of the unsecured creditors set forth above, demanding documentation proving a valid debt as well as proof of standing/ownership of the debt. To date, there has been no documentation, amendment or withdrawal of claim received from any creditor listed above. Copies of the demand letters are annexed here to as Exhibit "B."

**ARGUMENT**

5. Bankruptcy Rule 3001 requires that when a proof of claim is based on a writing, an original or duplicate of the writing must be filed with the proof of claim.[1] Rule 3001(a) also states that the proof of claim "shall

---

[1] Fed.R.Bankr.P. 3001(c). If the writing has been lost or destroyed, a statement describing the loss or destruction must be filed.

2

conform substantially to the appropriate Official Form."[2]  A review of the proofs of claim objected to reveals that they are devoid of any documentation as to the liability of the Debtor aside from a "summary sheet" attached to the claim form which simply repeats the information filled in on the claim form.  The claims as filed set forth no evidence that there is a valid contract between the Debtor and the respective creditor or how the amount claimed was computed.

6. Line 7 of Official Form B10 sets forth what type of supporting documents will act as evidence of the validity of the claim:

> "7.  Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary."

7. The purpose of these rules is to ensure that debtors and other interested parties have sufficient information to determine whether to object to a claim.  Without such evidence, it is impossible to determine whether the amount claimed by the creditor has been inflated with the imposition of illegal post-petition interest or fees.  the debt may be stale due to statute of limitations.  As a minimum, court decisions have required creditors to produce sufficient number of monthly account statements to show how the total amount has been calculated as well as a copy of the original agreement authorizing the charges and fees included in the claim.[3]  The form of the existing claims filed by the creditors in this case denies the Court, the Trustee and the Debtor the opportunity to determine the validity of the claim and the extent to which the amount of the claim is accurate and unfairly shifts the burden of determining the validity to the

---

[2] Fed.R.Bankr.P. 3001(a). The directions to Official Form 10, Proof of Claim, provide that "[c]reditors must attach to the proof of claim form copies of any documents showing that the Debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents."
[3] See *In re Henry*, slip.op.BK No. 09-25104 (Bankr. W.D. Wash. Apr. 14, 2004).

Debtor who is far more unsophisticated and who lacks the knowledge and ability to understand credit transactions, average daily balance computations and the precise method to determine accrued interest on the account. Moreover, and as is further discussed below, the above-referenced proofs of claim are "unenforceable against the debtor[s] and the property of the debtor[s], under any agreement or applicable law" pursuant to 11 U.S.C. §502(b)(1). These creditors are not, in most cases, the true owners of these debts, have no knowledge or information concerning the Debtor or these debts, are not entitled to a distribution, and have, in essence, filed fraudulent claims.

8. The creditors whose proofs of claim are being objected to are debt purchasers that the Debtor has never heard of, do not have any privity of contract with, and dispute the fact that the debts in question were ever legally purchased by these entities. In other words, these debt buyers are not the true owners of the debt and are unable to evidence any title to the account for which a distribution is sought.

### A. Claim #1 filed by Department Stores National Bank/Macys, TSYS Debt Management, Inc.

Department Stores National Bank/Macys, TSYS Debt Management, Inc. alleges in its proof of claim that Debtor owes the sum of $2,917.50 as "money loaned." Debtor can only guess that this debt was purchased from Macys Department Store for there is no evidence attached stating that Department Stores National Bank/Macys, TSYS Debt Management, Inc. owns this debt, or was properly assigned this debt, or that the debt is not stale due to statute of limitations. The Debtor listed on Schedule F Macys as disputed and for a lesser sum due. No response was received from my letter demanding such documentation dated October 21, 2009.

**B. Claims #6, 7 and 12 filed by PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC**

1. Claim #6, PRA Receivables Management, LLC filed a proof of claim in the sum of $14,594.81 stating date of loan as 9/12/2002, with PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC, successor in interest to Citibank, without any proof of assignment or agency status. A debt to Citibank was disputed on Schedule F by the Debtor for a lesser sum and there has been no additional documentation provided to the undersigned as demanded in the annexed letter.

2. Proof of claim #7 filed by PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC in the sum of $10,340.37, stating date of loan as 12/1/1992, that the account was purchased from Citibank on 3/24/2009, without any documentation of assignment or agency and no additional documentation has been provided as requested in the letter of the undersigned annexed hereto. Debtor has no knowledge of a Citibank account ending in #xxxxxxxx8800 listed on the proof of claim and the Citibank account listed on Schedule F was disputed.

3. Proof of claim #12 filed by PRA Receivables Management, LLC, as agent of Portfolio Recovery Associates, LLC in the sum of $12,060.32 in which PRA Receivables Management, LLC claims to be successor on interest to HSBC Bank. However, no assignment was attached nor proof of agency or any other proof that PRA Receivables Management, LLC, as agent of Portfolio Recovery Associates, LLC is the proper owner of this debt, or that the statute of limitations has not run, despite demand for such documentation by the undersigned as annexed hereto. Debtor did list Union Plus Credit Card with account # ending in xxxxxxxx1784 as disputed

and in a sum less than claim #12. However, there is no proof that this is the same debt.

**C. Claim #9 filed by Roundup Funding, LLC**

Roundup Funding, LLC filed a proof of claim in the sum of $880.32 alleging an assignment by Chase Bank USA, N.A. However, no such assignment was annexed to the proof of claim and Roundup Funding, LLC has failed to provide any documentation of its standing as requested in the letter of the undersigned annexed hereto as Exhibit "B." Chase account was listed on Schedule F, under a different account number and was disputed.

9. When debt buyers attempt to collect on the debt they purchased, they often cannot make a *prima facie* case. But for the fact that most debtors are bullied and harassed by debt collectors and most debtors default if sued and fail to object to claims, the collection rates would be much smaller. Absent an account stated, debt buyers have no knowledge whether a debt is still outstanding, whether it is in dispute, whether the statute of limitations has run out, and whether the debtor contractually ever owed money to the transferor of the debt. Absent an account stated, the debt buyer cannot make a *prima facie* case. See, In re <u>Elizabeth Hess</u>, 08-14016 (MG) decided by Judge Martin Glenn on May 6, 2009.

10. "An account stated has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance." <u>McHugh v. Olsen</u>, 189 Ill.App.3d 508, 514, 545 N.E.2d 379 (1st Dist. 1989). Thus, a cause of action for an account stated is founded on both (a) the underlying contract and (b) the statement of account sent to the Debtor and agreed to by the Debtor. Both must be attached.

11. For an illustration of the problem, see <u>Citibank (South Dakota), N.A. v. Martin</u>, 11 Misc.3d 219; 807 N.Y.S.2d 284, 2005 N.Y.Misc. LEXIS (Civ.Ct., Dec. 16, 2005), which sets forth the applicable proof requirements:

> As a part of a credit card issuers presentation of a prima facie case, the motion papers also must include an affidavit sufficient to tender to the court the original agreement, as well as that any revision thereto, and the affidavit must aver that the documents were mailed to the card holder. n4 The same affidavit typically advances copies of credit card statements which serve to evidence a buyer's subsequent use of the credit card and acceptance of the original or revised terms of credit… The affidavit often addresses whether there was any proper protest of any charged purchase within 60 days of a statement (15 U.S.C. §1601; 12 C.F.R. §226.13[b][1], a provision in 12 C.F.R. part 226, referred to as "Regulation Z" or "Truth in Lending" regulation)…
>
> The affidavit must demonstrate personal knowledge of essential facts… An attorney's affirmation generally cannot advance substantive proof…
>
> … as to assigned claims, it is essential that an assignee show its standing, which "doctrine embraces several judicially self-imposed limits on the exercise of… jurisdiction such as the general prohibition on a litigant's raising another person's legal rights"… A lack of standing renders the litigation a nullity, subject to dismissal without prejudice… It is the assignee's burden to prove the assignment… Given that courts are reluctant to credit a naked conclusory affidavit on a matter exclusively within a moving party's knowledge… an assignee must tender proof of assignment of a particular account or, if there were an oral assignment, evidence of consideration paid an delivery of the assignment…

12. In the case of <u>Palisades Collection LLC v. Haque</u>, New York Law Journal, April 13, 2006, p. 20, col. 3 (Civ. Ct. Queens Co.) (Pineda-Kirwin, J.), the plaintiff was a debt collector on behalf of AT&T Wireless. The case was dismissed against the defendant because plaintiff could not prove title to the debt, could not authenticate the contract, and could not show that the debtor had failed to pay. The <u>Haque</u> court also held insufficient the offer of "generic" contracts which could not be linked to the defendant's account.

> While it is well settled that the absence of an underlying agreement, if established, does not relieve a defendant of his obligation to pay for goods and services received on credit, (Citibank (SD) NA v. Roberts, 304 Ad2d 901 [3rd Dept. 2003]), that is not the sole impediment to this plaintiff's case. Here, without any admissible evidence from its alleged assignor, plaintiff was unable to establish that AT&T Wireless and defendant entered into a contract pursuant to which defendant was obligated to pay for the additional charges for which defendant now sues.

The court also held a claim of assignment insufficient without proof of assignment:

> Plaintiff did not prove by a preponderance of the evidence that defendant's account was in fact assigned to plaintiff. (See Copelco Capital, Inc. v. Packaging Plus Services, Inc., 243 AD2d 534 [2nd Dept. 1997]; Citibank (SD), NA v. Martin, 2005 Slip Op 25536 [Civ. Ct. NY County]).
>
> Similarly, plaintiff as an alleged assignor, failed to establish the requisite elements for recovery on a theory of account stated. (Heelan Realty & Dev Corp. v. Ocskasy, 2006 NY Slip Op 2166 [2d Dept. 2006]). There was no evidence before the Court that defendant assented, expressly or impliedly, that he was indebted to plaintiff, or, for that matter, AT&T Wireless, in the sum claimed, and undertook, by express or implied promise, to pay it. (Tridee Assoc., Inc. v. Bd. Of Educ. Of City of New York, 22 AD3d 833 [2d Dept. 2005]).

In the case of Palisades Collection, LLC a/p/o AT&T Wireless v. Gonzalez, 58564 CV 2004, 2005 NY Slip Op 52015U; 10 Misc. 3d 1058A; 809 N.Y.S.2d 482; 2005 N.Y. Misc. LEXIS 2774 (N.Y. County Civ. Ct., Dec. 12, 2005) (Ellen Gesmer, J.), much the same thing happened on a motion for summary judgment. The Court held that affidavits based on "books and records" but not executed by someone familiar with the manner in which the entity that engaged in the transactions prepared and maintained the books and records are insufficient. The Court further held insufficient an affidavit that an assignment had occurred without production of the document. Therefore, plaintiff had failed to establish that it has the right to collect on the debt.

13. Debt buyer affidavits and other related documents are insufficient to show that the debt buyers have title to the debt: <u>Unifund CCR Partners v. Harrell</u>, 2005 Conn. Super. LEXIS 2037 (Aug. 3, 2005) (Failure to produce signed agreement or affidavit authenticating purported agreement as that entered into with defendant results in denial of summary judgment. Affidavit of "plaintiff's legal coordinator" that "she has access to the records of Unifund CCR Partners and therefore has personal knowledge of the facts" not sufficient); <u>First Select Corp. v. Grimes</u>, 2003 Tex. App. LEXIS 604 (Jan. 23, 2003) (summary judgment for debtor affirmed where there was no evidence that the debtor used the credit card after First Select sent out an agreement modification and no copy of the written agreement between the original creditor and the consumer or the consumer's acceptance of such agreement); and <u>CACV of Colorado, LLC v. Corda</u>, 2005 Conn. Super. LEXIS 3542 (Dec. 16, 2005) (Court refused applications to confirm arbitration awards where only document contained no dates or signatures.

14. Therefore, if a debt buyer, whether in the capacity of a plaintiff or a filer of a proof of claim, cannot prove that it has title to the debt, cannot authenticate the contract between the original creditor and the debtor, and cannot show that the debtor failed to make payments on the underlying debt, then the debt buyer cannot make a <u>prima facie</u> showing that it is entitled to payment on the debt.

15. In the case at hand, requests for verification and proof that the claims filers/debt buyers actually purchased the debts and have standing were made. No response has been received. The Debtor believes that the claim filers cannot produce any admissible evidence showing the purchase and assignment of the specific debt contained in the proofs of claim filed with this Court from the original creditors or from previous debt buyers, and cannot produce admissible evidence showing an

account stated and therefore, believe that they are not entitled to file the proofs of claim in question and request that they be disallowed and expunged and deemed to be fraudulently filed.

16. As a point of interest, a demand letter was sent concerning proof of claims #2, 3 and 8, and the creditors provided documentation to the undersigned. Therefore, those claims were not included in Debtor's objection.

17. No prior application has been made for the relief requested herein.

WHEREFORE, the Debtor requests an Order of this Court against the above referenced creditors:
1. Disallowing and expunging unsecured claims #1, 6, 7, 9 and 12;
2. Imposing fines in an amount to be determined by the Court upon each creditor named above as penalty for presenting a fraudulent claim;
3. An award of attorney's fees to be paid by the creditor in the amount of $2,000.00 for each claim deemed to be fraudulent and/or disallowed; and
4. Granting such additional and further relief that the Court deems just, necessary and proper.

DATED: November 18, 2009
New York, New York

_____
DAVID B. SHAEV (dbs6994)
Attorney for Debtor
350 Fifth Avenue, Suite 7210
New York, New York 10118
(212) 239-3800