UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: OLGA D. PARADES            CASE NO. 09-22261 RDD
ssn: \*\*\*-\*\*-6072
                 Debtor.

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

**DEBTOR'S OPPOSITION TO PHH'S MOTION FOR RECONSIDERATION OF ITS CLAIM, MOTION FOR STAY UNDER RULE 8005 PENDING APPEAL, AND OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN AND IN SUPPORT OF DEBTOR'S REQUEST FOR SANCTIONS AND COUNSEL FEES**

Debtor, Olga D. Paredes, by her attorney, David B. Shaev, Esq., as and for her opposition to PHH's Motion to Reconsider Its Claim, Motion to Stay Pending Appeal, Objection to Amended Plan and Debtor's request for Attorney's Fees and Sanctions, states:

1. Debtor filed a petition under Chapter 13 of the Bankruptcy Code on February 25, 2009.

2. PHH Mortgage Corporation ("PHH") filed its Proof of Claim on April 7, 2009.

3. Debtor's Motion Objecting to PHH Proof of Claim was filed on July 14, 2009.

4. A hearing on the Objection was held on September 29, 2009 at which time Debtor's Motion was granted and an Order Expunging PHH's claim was entered on Oct. 13, 2009.

1

5. On October 30, 2009 PHH filed a Notice of Appeal from the Order of October 13, 2009.

## **MOTION TO RECONSIDER PHH CLAIM**:

6. PHH has filed a motion requesting that this Court reconsider its decision after hearing, to expunge PHH Proof of Claim, and cites authority under Sec. 502(j) of Title 11 of the United States Code and Rule 3008 of the Federal Rules of Bankruptcy Procedure.

7. As shall be demonstrated hereinafter, this motion should be denied for the following reasons:
   a. The Motion to Reconsider should have been filed before the Appeal of this Court's Order expunging PHH claim. How does this Court have jurisdiction to reconsider if an appeal is pending?
   b. The additional documents submitted by PHH fail to establish PHH as a real party in interest/beneficiary holder of the note and mortgage or prove agency for standing purposes; and
   c. The additional documents submitted in PHH's motion contradict prior statements/documents submitted by PHH to this Court and in at least some instances are a fraud upon this Court.

## **MOTION FOR STAY OF BANKRUPTCY PROCEEDING**

8. PHH has additionally filed a motion seeking a Stay under Rule 8005 Pending Appeal.

9. As shall be demonstrated hereinafter, this motion should be denied for the following reasons:

a. The appeal is from an Order that was not a final judgment since PHH had the right to file a motion to reconsider, but failed to timely do so before the filing of the appeal, and furthermore could have filed an Amended Proof of Claim with leave of the Court.

b. By filing the Appeal, PHH has elected to divest this Court of any jurisdiction to deal with other matters related to the claim or claims of PHH; and

c. PHH has failed to demonstrate the likelihood of success on appeal.

## OBJECTION TO AMENDED PLAN

10. As previously established by Debtor's Objection to PHH Proof of Claim, and by this Court's Order Disallowing such claim, PHH has failed to demonstrate that it has the requisite standing to object to Debtor's Amended Plan. In addition, the Debtor takes the position that by appealing from the Order Disallowing the Claim PHH has no standing to object to the Amended Plan.

11. However, the documents presented by PHH in the numerous motions it has filed with this Court, including the admissions contained in the James D. Scott Affidavit ("Scott Aff.") support Debtor's Amended Plan that in fact there is *no duly perfected interest in the real estate in the securitized mortgage-backed trust prior to or at the time of the filing of this bankruptcy case.*

## SANCTIONS AND ATTORNEYS FEES AND COSTS SHOULD BE AWARDED AGAINST PHH AND ITS COUNSEL

12. The filing of the two motions and objection, after the filing of the appeal, accompanied by additional documents which on their very face are inconsistent with prior representations and nonsensical at best, and

in some instances raise serious issues of authenticity of the documents themselves, constitute upon information and belief, a continuing fraud upon this Court in this case.

13. Debtor has been caused to incur extraordinary and unnecessary legal fees and disbursements which should be borne by the filer of such motions and not by the Debtor or other creditors in this case.

## ARGUMENT: MOTION TO RECONSIDER

14. Debtor's response to PHH's Motion to Reconsider is divided into two sections:
    a. Analysis of PHH Memorandum of Law In Support of its Motion To Reconsider; and
    b. Analysis of the Affidavit of James D. Scott with Exhibits on behalf of the Motion to Reconsider.

15. *PHH Memorandum of Law:*
    a. PHH moves under Rule 3008 of the Federal Rules of Civil Procedure ("FRCP"). However, as stated in the Advisory Committee Notes to the FRCP:

    > "Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."

    The Advisory Committee further states:

    > "The court may decline to reconsider an order of allowance or disallowance without notice to any adverse party and without affording any hearing to the movant."

    And, the court may

"…enter any other appropriate order."

   b. Therefore, this Court can clearly deny PHH's Motion to Reconsider with or without hearing, and can impose sanctions under Rule 3008 as well as Bankruptcy Section 105(a).

16. PHH states that this Court exceeded its authority (top of page 2, PHH Memorandum) by disallowing the proof of claim. In turn, PHH cites Rule 3008, which states:

   "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate."

   One might ask Movant, how it can move under a rule to reconsider a disallowed claim if this Court has no ability to disallow a claim?

17. PHH incorrectly states that this Court expunged its claim because it was not convinced that PHH had established a transfer to U.S. Bank, N.A., as Trustee (see bottom of page 1). It is the opinion of the undersigned that PHH failed to convince the Court of ANY appropriate party for standing purposes or otherwise.

18. PHH purports to provide this Court (now) with documents that "…should address all of the Court's concerns." (PHH Memorandum, page 3)
   a. First, PHH had ample opportunity to provide appropriate documentation prior to hearing on Objection to Claim, and after repeated requests by Debtor's counsel, including a lengthy adjournment. The Proof of Claim was executed on March 31, 2009, more than 6 months ago, Debtor's Objection to Proof of Claim was

5

filed on July 14, 2009 and the adjourned hearing on Debtor's Objection was heard on Sept. 29, 2009; and

b.  It is likely that this Court will have further concerns about PHH's documentation after reviewing the Debtor's discussion of the Affidavit of James D. Scott below. In fact, the "new" documents raise more questions than answers.

19. PHH's reliance on Rule 60(b)(1), which affords relief for "mistake, inadvertence, surprise, or excusable neglect is defeated by the time which was generously afforded PHH to provide whatever documentation it could produce over the months prior to the court hearing. Furthermore, PHH by way of the Motion to Reconsider is seeking to have this Court rule on a matter that PHH has already attempted to appeal to the District Court. A party cannot have it both ways—either you appeal or seek a timely Motion to Reconsider—you cannot do both at the same time.

20. Additionally, PHH is submitting new documentation which was not included in the original pleading.

21. And, the statement by counsel at the court hearing on Sept. 29th, that in fact "It was standard operating procedure for many years" (Transcript docket exhibit number 35, p.15, line 3), belies PHH's reliance upon Rule 60(b)(1). In short, there can be no mistake or surprise or newly discovered evidence to support a Rule 60 motion based on this assertion by counsel, which is a binding admission against PHH.

22. PHH's reliance in support of the Motion to Reconsider the prior adverse holding on the Proof of Claim included the affidavit of Tracy

Johnson. The Affidavit of Tracy Johnson is totally ignored in PHH's current "chain of title."

23. In addition, PHH's reliance on "lack of willfulness" (PHH Memorandum p.6) is without foundation due to the 6 month delay in providing its current "story," the prior filing of the Tracy Johnson Affidavit, the filing of the James D. Scott Affidavit with this motion, and its utter failing to comply with the requirements of Form B10, # 7, which states:

> "7. Documents Attached…copies of any documents supporting claim…providing evidence of perfection of a security interest… If the documents are not available, please explain."

24. Six months after the filing of the Proof of Claim, PHH has still failed to provide a complete chain of title as discussed below. In fact, PHH decries this Court's ruling expunging its proof of claim, "…not on the merits of the case but rather on a lack of paperwork that is not required by Federal or State statute or case law." (PHH Memorandum, p. 8)

25. It is the opinion of the undersigned, that it was the lack of any credible and provable paperwork that led to the Court's ruling.

26. a) PHH's reliance on In re *Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008) is readily distinguishable and not generally followed. The facts in *Dedonato* are also very different.

b) In *Dedonato*, the Debtor listed the servicer as an undisputed debt, named the servicer for post petition payments in its plan and did not dispute the debt until after debtor filed the objection to claim. In Paredes, the claim has been repeatedly disputed.

c) In *Dedonato*, the Court found an agency relationship between the servicer and the Trust. In Paredes this has not been evidenced.

d) *Dedonato* does not take into account Real Prop. Law Sec. 418, which states that:

> "The holder of any mortgage, lease, or other lien or charge on registered property, in order to transfer the same or any part therof, shall execute an assignment of the whole or any part thereof;"

27. And see, In *re Foreclosure Cases*, 521 F. Supp. 3d 650, 653 (S.D. 2007) (servicing agent may not have standing since the Federal Courts only have power authorized by Article III of the Constitution; In *re Hwang*, 2008 WL 4899273 (servicing agent does not have standing for only a person who is the holder of the note has standing to enforce the note; In *re Schwartz*, 366 B.R. 265 (Bankr. D. Mass. 2007) (there was no evidence of a proper assignment of the mortgage and who the current holder might be); *Deutsche Bank Nat's Trust Co. v. Steel*, 2008 WL 111227 (S.D. Ohio, January 8, 2009) (bank must offer evidence showing, by a preponderance of the evidence, that it owned the note and mortgage at the time it filed papers in court); *HSBC Bank USA, N.A. v. Valentin*, 21 Misc. 3D 1124(A), 2008 WL 4764816 (Table)(N.Y. Sup., Nov. 3, 2008) (HSBC could not show ownership of debt and mortgage despite repeated opportunities to do so by the court).

28. New York Supreme Court Judge Arthur Schack has taken the position that once a writing is submitted, the Court will require a thorough a complete verification of its authenticity. Judge Schack has repeatedly denied plaintiffs' motions in foreclosure actions, requiring additional verification pertaining to the authenticity of submitted

assignments. *WELLS FARBO BANK, N.A., as Trustee for FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF15, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF15 v. SEM M. SAINT AUBIN, ET. AL.* 37401/07 Supreme Court of the State of New York, Kings County, Decided February 10, 2009.; *DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under Pooling and Servicing Agreement Dated as of April 1, 2007 Securities Asset Backed Receivables, LLC Trust 2007-BR2 Mortgage Pass-through Certificates, Series 2007-br2 v. LINDA BAILEY ET. AL.* 2009 NY Slip Op 50191(U) 3747/08 Supreme Court of the State of New York, Kings County Decided February 9, 2009.; *INDYMAC BANK, FSB v. RANDOLPH BETHLEY; SONIA BADILLO ROSADO, ET. AL.* 2009 NY Slip Op 50186(U) 9615/08 Supreme Court of the State of New York, Kings County Decided February 6, 2009.

29. PHH's statement that there is little if any prejudice to Debtor is incredibly naïve and not supported by the facts.
    a. The Debtor has been in Loss Mitigation for approximately 9 months, and there has been no movement whatsoever on the party of PHH. If PHH was sincere in its efforts to resolve this case, it would have made at least some offer to modify in loss mitigation.
    b. The Debtor is incurring very high legal expenses which need to be paid either by Debtor, the other creditors in this case or by Movant. In fact, it is likely that legal fees incurred on behalf of Debtor will exceed the total of the alleged arrears.
    c. The Debtor filed this Chapter 13 bankruptcy to move on with her life and stay in her home. She did not filed this bankruptcy to be involved in continuing litigation.

30. PHH reliance on Rule 60(b)(6), the general catchall clause, by claiming "unfair prejudice" (PHH Memorandum, p. 7), ignores the fact

9

enunciated by PHH that it alleges it maintains a lien on Debtor's property.

31. PHH maintains that a servicer is qualified to file a proof of claim. (PHH Memorandum, p. 9) In certain instances, a servicer would be qualified to file a proof of claim when a true agency relationship has been evidenced with the real party in interest. Such agency has not been proven in this case.

32. It is the opinion of the undersigned that the only rights PHH *may* have in filing a proof of claim in this case would be for its servicing fees, if any are due, and not for alleged note/mortgage payments that are purportedly due to third parties.

33. PHH"s reliance on N.Y. Real Prop. Law Sec. 244, speaks to transfer of interest by deliverance, and Debtor does not disagree that a note and mortgage needs to be actually transferred, for real value, with delivery and acceptance receipts pursuant to the Pooling and Servicing Agreement of the Trust.

34. PHH, however, failed to bring to this Court's attention, N.Y. Real Prop. Law Sec. 418, which states, in part:

> "(The) holder of any mortgage…in order to transfer…shall execute an assignment…"

35. And of course, an assignment to an assignee only conveys the rights properly held by the assignor through an unbroken chain of title.

36. Finally, PHH states: "PHH did not provide a contemporaneous written assignment because it did not need to. The affidavit was

sufficient, and even if it were not, PHH has now provided this Court with clear evidence of the transfer to U.S. Bank as Trustee through the Scott Affidavit. (PHH Memorandum, p. 11)

37. Let us now turn to the James D. Scott Affidavit ("Scott Affidavit")

**THE SCOTT AFFIDAVIT**:

38. James D. Scott states that he is the "…manager of the foreclosure and bankruptcy team of PHH Mortgage Corporation."(Scott Aff., par. 1) Debtor would ask Mr. Scott whether he is *employed* by PHH, or whether he is in fact an employee for a third-party out-source document provider, such as LPS-Fidelity or other document providers.

39. Scott states that he "…derived my knowledge of this case from my review of the books and records kept by PHH in the regular course of its business…" (Scott Aff. P.1). This is clearly hearsay and not admissible, as he does not claim to know how the records were created and whether they were created in the regular course of business. Nor does Scott state what records were reviewed, whether by computer or otherwise, how such equipment is maintained and whether he reviewed copies or otherwise.

40. Scott states that "PHH has in its possession the original of a Note that was executed on or about March 30, 2006, by the Debtor." (Scott Aff. Par. 2) This raises a series of questions:
   a. Why does PHH have the original Note if it is just a servicer?
   b. Where are the transfer receipts?
   c. Were there any transfers pursuant to TILA amendments effective May, 2009, requiring disclosures and transfers of its mortgage loans within thirty days?

41. Scott alleges that "On April 17, 2006, the Paredes loan, both debt and servicing rights, were transferred on the books of MERS from Mortgage World Bankers to PHH. A copy of the MERS system report for the Paredes loan is attached as Exhibit 'A.' No document evidencing the assignment beyond the notation on the books of MERS was executed at the time because the loan remained in the name of MERS, as nominee…" (Scott Aff. Par. 3)

42. Scott is apparently stating that both the servicing rights and the debt were transferred to and from MERS with no physical delivery, negotiation or assignment. That is an incredible admission that no documents were executed nor true delivery and acceptance of the mortgage and note.

43. First, MERS never maintains rights in the notes and never claims to have such rights.

44. The only record of such transfer is allegedly on the Milestone records and such tracking by MERS has no legal bearing as to proof of holder/ownership.

45. Paragraphs 5 and 6 of the Scott Affidavit requires special attention to detail:
    a. There are 2 allonges annexed to the Scott Affidavit as Exh. "C" and "D," both alleged executed by Theresa Alibrando.
    b. A review of the signatures of Theresa Alibrando clearly leads to the conclusion that they were *not signed by the same person.*
    c. In addition, the allonges were submitted to this Court without the note. An allonge cannot transfer a note by its execution. One

must deliver the original note with an allonge permanently affixed to the note for a transfer to have occurred.

d. Instead, Scott states "That transfer is reflected by an allonge to the Note which was executed by Theresa Alibrando, an *Assistant Vice President of PHH*." (Scott Aff. Par. 5)

46. Next, there was an additional transfer by PHH and Bishops Gate Residential Mortgage Trust by "…an additional allonge …by Theresa Alibrando, on behalf of PHH Mortgage Corporation as *administrative agent for Bishops Gate Residential Mortgage Trust*." (Scott Aff. Par. 6)
    a. Again, a transfer is not effectuated by the mere execution of an allonge.
    b. Where are the delivery and transfer receipts for this transfer?
    c. Where are the confirmation forms executed by the Master Custodian?
    d. Where is proof that adequate consideration was paid for either of these alleged transfers?

47. Once again, we see an individual, Theresa Alibrando, "represent" two supposedly separate entities, as did Tracy Johnson.

48. How did Goldman Sachs physically transfer the loan to GS Mortgage Securities Corp. in July of 2006?
    a. Where are the delivery and transfer receipts for this transfer?
    b. Where are the confirmation forms executed by the Master Custodian?
    c. Where is proof that adequate consideration was paid for this alleged transfer?

49. How did GS Mortgage physically transfer the loan to US Bank, NA as Trustee for GSAA Home Equity Trust 2006-12?

a. Where are the delivery and transfer receipts for this transfer?

b. Where are the confirmation forms executed by the Master Custodian?

c. Where is the proof that adequate consideration was paid for this alleged transfer?

d. How did the Trust become "owner and holder" of the note if PHH has the original?

e. Why did MERS execute an assignment of the mortgage to the Trustee?

50. a) This Court is aware that Tracy Johnson, who at various times was Assistant Vice President of MERS and PHH, was the purported signatory of an assignment of mortgage from MERS to PHH on March 16, 2009.

51. b) How then, did MERS execute an assignment of the mortgage to the Trust, and when did this assignment occur?

> May 5, 2008?
>
> Sept. 9, 2008?
>
> March 12, 2009?
>
> (par. 8, Scott Aff.)

52. Perhaps most telling, is paragraph 11 of the Scott Affidavit, which states:

> "11. Despite the transfers of the loan, the original of the Note was physically retained by PHH…"

53. a) This statement appears to be an *admission* that the *Trust is not a duly perfected secured party* in that it never in fact owned and held the original note.

54.   b) This statement apparently moves this case from Debtor's allegation that PHH did not have standing, to the allegation that *no party has standing*.

55.   Based upon the foregoing, Movant's Motion to Reconsider should be denied in full.

### **STAY PENDING APPEAL**

56.   In the opinion of the undersigned, a Stay pending appeal may have been called for *prior* to the filing of the instant motions.

57.   However, it is clearly inappropriate to file a Motion for Reconsideration after the filing of the appeal, and Movant's course of litigation has caused Debtor's counsel to expend extraordinary and continuing time and disbursements litigating Movant's Proof of Claim, including the entire Thanksgiving weekend since the motions were filed on the ECF system beginning 5:48p.m. Thanksgiving eve.

58.   As previously stated, Movant has not proven a likelihood of success on appeal and in fact has further enveloped itself in questionable documentation and lack of supporting documentation.

59.   By reason of the above, Movant's application for a Stay pending appeal should be denied.

### **REQUEST FOR COUNSEL FEES AND SANCTIONS**

60.   To date, counsel for the Debtor has withheld filing any fee application for services and disbursements incurred by reason of the filing of the Proof of Claim by PHH and subsequent litigation.

61. However, it is the opinion of the undersigned, that the Motion to Reconsider AFTER the filing of the Appeal is inappropriate, ill-timed and filed in an attempt to overwhelm a solo practitioner such as the undersigned.

62. It is important to remind this Court that although Loss Mitigation has been pending for many months, and that Debtor has complied with all requests made by PHH. However, no offer has been made to settle this matter even after PHH's Proof of Claim was expunged. It is clear that litigation is the chosen course of PHH and its counsel.

63. a) It is also clear, that PHH has continued to submit documentation which raises more questions than answers, and in certain instances, raises obvious questions of authenticity.

    b) Counsel for PHH has not been diligent in reviewing prior to submission, supporting documents as counsel must have known would be demanded by the undersigned, the United States Trustee and this Court.

64. The undersigned has submitted an Affirmation annexed hereto including time declaration and disbursements for all services rendered by counsel in connection with the Proof of Claim filed by PHH excluding all other services rendered on behalf of Debtor.

65. In the annexed Affirmation, the undersigned is seeking attorney's fees in the sum of $29,960.00 and disbursements in the sum of $486.98, to be awarded to counsel and to be paid by PHH and its counsel.

66. In addition, Debtor seeks sanctions awarded against PHH and its counsel for their actions and lack of due diligence in demanding that only authentic and sustainable documents and statements be filed with the Court.

WHEREFORE, Debtor respectfully requests the following:

a. A denial of Movant's Motion to Reconsider:
b. A denial of Movant's Motion Seeking a Stay Pending Appeal;
c. A denial of Movant's Objection to Amended Plan;
d. An Order Granting counsel fees and disbursements to Debtor's counsel;
e. An Order issuing Sanctions against PHH and its counsel; and
f. For such other and further relief as this Court may deem just and proper under the circumstances.

Dated: December 3, 2009
New York, New York

David B. Shaev (6994)
Attorney for Debtor
350 Fifth Avenue, Suite 7210
New York, New York 10018
(212) 239-3800

TO:

U.S. Department of Justice
Office of the U.S. Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004

Jeffrey L. Sapir
Chapter 13 Trustee
399 Knollwood Road, Suite 102
White Plains, NY 10603

Shapiro, DiCaro & Barak, LLP
250 Mile Crossing Boulevard, Suite One
Rochester, NY 14624
Attention: John A. DiCaro, Esq.